IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE EQUAL RIGHTS CENTER | : | |
| | : | |
| v. | : | Civil Action No. DKC 07-2358 |
| | : | |
| LION GABLES RESIDENTIAL TRUST, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging violations of the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA") are motions filed by Defendants Lion Gables Residential Trust and Lion Gables Realty Limited Partnership to designate discovery material as public, or, in the alternative, for leave to seal (paper 92); by Plaintiff, The Equal Rights Center, to compel discovery (paper 109); and by Defendants for leave to file a surreply (paper 110). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion to designate material as public will be granted in part and denied in part; Plaintiff's motion to compel discovery will be granted in part and denied in part; and Defendants' motion to file a surreply will be denied.

## I. Background

Plaintiff, The Equal Rights Center ("ERC"), is a non-profit civil rights organization dedicated to identifying, challenging, and eliminating discrimination in housing, employment, public accommodations, and government services. Defendant Lion Gables Residential Trust is a real estate investment trust, organized under Maryland law, that develops and manages multifamily housing dwellings across the United States. Defendant Lion Gables Realty Limited Partnership is a Delaware limited partnership owned and controlled by the Lions Gables Residential Trust (together, "Gables").

On September 6, 2007, ERC filed a complaint in this court alleging that Gables had "engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, controlling, managing, and/or owning covered multifamily dwellings, and the common-use and public-use areas associated with those covered dwellings, in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws." (Paper 1, ¶ 5). *See* 42 U.S.C. §§ 3604(f)(1), (2), (3)(c); 42 U.S.C. §§ 12182(a), 12183(a)(1). After an initial period of motions practice, the parties commenced an extensive discovery process that has been facilitated by an agreement that Gables

will provide rolling responses for the "subject properties" in seven nationwide regions according to a schedule. While the parties have worked diligently to resolve many discovery issues that have arisen, they have requested court intervention with respect to others. Several of those outstanding issues are addressed herein.

## II. Gables' Corrected Motion to Designate Discovery Material as Public or, in the Alternative, for Leave to Seal

On April 27, 2009, the court issued a Stipulated Order Regarding Confidentiality of Discovery Material, which provides, in pertinent part, that either party may designate discovery material "as confidential only when such person in good faith believes it contains sensitive personal information, trade secrets or other confidential research, development, or commercial information." (Paper 55, ¶ 1(a)). The parties agreed that any information or documents designated as confidential "shall not be used or disclosed . . . for any purposes whatsoever other than preparing for and conducting the litigation" (*id*. at ¶ 1(c)), and that where such confidential materials are filed with the court, they must be filed under seal and accompanied by a "simultaneous motion pursuant to L.R. 104.13(c)" (*id*. at ¶ 2). The order further provides that a designation of confidentiality may be challenged upon motion, and that "[t]he burden of proving the confidentiality of

designated information remains with the party asserting such confidentiality." (*Id*. at ¶ 4).

On October 21, 2009, Gables filed under seal a number of exhibits in support of two motions for protective orders (papers 85, 86), along with a motion to designate discovery material as public or, in the alternative, for leave to seal the material (paper 87). That motion was subsequently withdrawn and replaced, the following day, by a substantively-identical corrected motion (paper 92). The underlying motions for protective orders were decided at a motions hearing held on November 19, 2009. (Papers 102, 105). Gables' corrected motion to designate discovery material as public, or to seal, however, is still pending.

Gables' corrected motion challenges the confidentiality designation by ERC of a number of "floor plan review files" and "testing files" attached as exhibits. ERC concedes that the floor plan reviews do not need to be confidential; accordingly, Gables' motion will be granted with respect to those documents. ERC contends, however, that the testing files contain innovative methods for conducting accessibility inspections akin to trade secrets, that those documents were properly designated as confidential, and that they must remain under seal in the motions papers filed by Gables.

Under the confidentiality agreement, the burden is on ERC to justify confidential treatment. It asserts that it developed the methodology set forth in its testing files through confidential research that has taken place over a number of years and that public disclosure would compromise its ability to perform objective and anonymous inspections of multi-family housing, as the files illustrate specific patterns and reveal the identity of testers. At the November 19, 2009, motions hearing, counsel for ERC proffered, "[t]here are other firms that are seeking access to the same public funds to do testing and there are developers that are interested in thwarting testing." (Paper 105, at 17). At this stage, the documents are only being used as discovery and were submitted to the court to resolve a discovery dispute. They will not be used to support ERC's claims on the merits.

Gables counters that documents demonstrating the testing methodology are available on the public docket of prior litigation brought by ERC against a similarly-situated defendant, and that while ERC asserts this disclosure was inadvertent, it has taken no steps to correct the error. Moreover, Gables contends, this confidential information was submitted by ERC to HUD in order to secure grant funding, and Gables was able to obtain redacted documents revealing at least some of the confidential material from HUD by way of a Freedom

of Information Act ("FOIA") request.  As a result, according to Gables, the information ERC claims to be confidential is available for public perusal and the confidential nature of these documents has, in effect, been waived.

ERC maintains, however, that the disclosure of its testing procedures in the prior litigation was inadvertent, that it has no control over the documents that HUD produced, and that it has taken all reasonable steps to maintain the confidentiality of these files.  These measures are evidenced by that fact that it "routinely insists upon the entry of protective orders in all cases involving the testing material to ensure that it can treat its testing files as confidential"; that its testers are required to sign confidentiality agreements relating to their work for the ERC; and that it goes to great lengths to protect its testing methodology internally, including storing the files in a secure area and maintaining relevant electronic documents on a protected network not accessible to the public.  (Paper 99, at 7).  Furthermore, ERC argues, there is no compelling reason to publish the testing files, particularly where doing so would be likely to thwart its anonymous testing efforts, thereby frustrating its mission.

ERC has carried its burden of demonstrating that the testing documents reveal information akin to trade secrets, in that the sophisticated data collection it has developed provides

it a competitive edge in seeking funds to do its work, and public disclosure would not only jeopardize that advantage, but would also impinge on its ability to conduct the testing if more developers were aware of its methodology and particular measurements. In that respect, the testing methodology is akin to a trade secret, as ERC argues, and was properly designated as confidential. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 123 (D.Md. 2009) ("trade secrets are more than 'sensitive business information,' they are sophisticated, innovative methods or inventions that are the result of human creativity and ingenuity").

The fact that similar materials may have been disclosed in another case is not automatically fatal to a request for confidentiality, particularly where the disclosure was inadvertent. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 418 (4th Cir. 1999) ("some courts have embraced the rule that disclosure of information solely in a court's records will not, absent evidence of further publication, destroy the trade-secret status of that information") (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 849 (10th Cir. 1993)). Nor does the fact that HUD provided some of the confidential information in response to a FOIA request alter its confidential nature in this litigation.

ERC has demonstrated that it has taken reasonable steps to maintain the confidentiality of these documents and that its mission could be compromised if these documents were made available for public inspection. The stipulated order regarding confidentiality provides, in pertinent part, that material may be designated as confidential when a party "in good faith believes it contains . . . trade secrets or other confidential research, development, or commercial information." (Paper 55, ¶ 1(a)). The court is satisfied that ERC had such a good faith belief when it designated its testing files as confidential. Accordingly, Gables' motion to make public the testing files will be denied, and its alternative motion to seal the confidential documents attached as exhibits to its motions for protective orders will be granted.

## III. Motion to Compel Discovery

### A. Background

ERC served Gables with its first set of interrogatories on May 22, 2009, and its first set of requests for production of documents on May 15, 2009. In Interrogatory No. 4, ERC asked Gables to:

> Identify and fully describe . . . any evaluations of designs or site inspections you have conducted for each Subject Property, the persons involved in such evaluations, any alterations, repairs or retrofits related to accessibility taken by you, the results or recommendations of any

> such actions or evaluations, and the dates
> of any such actions or evaluations.

(Paper 109, Ex. 1, Attach. A, at 7). Similarly, ERC's fourth

document request asked Gables to produce:

> For any Subject Property, all documents,
> created or modified from January 1, 1989 to
> the present, concerning issues related to
> accessibility for people with disabilities,
> including for example and without
> limitation:
> . . . .
> d. Documents concerning the retrofit or
> modification of properties based in whole or
> in part on consideration of accessibility
> for people with disabilities; [and]
> . . . .
> g. Documents concerning any studies,
> analyses, reviews, inspections, or surveys
> of issues related to accessibility for
> people with disabilities.

(Paper 109, Ex. 1, Attach. B, at 8-9).

In responding to the fourth interrogatory, Gables noted an

objection "to the extent it calls for the production of

information protected from disclosure by the attorney client

privilege, the work product doctrine, or any other rule of

privilege or confidentiality." (Paper 109, Ex. 1, Attach. C, at

69). Gables identified, however, that it hired "third-party

consultants, such as Peter Skarzenski . . . to review

architectural plans and design drawings and to walk its

properties at various times during construction to ensure

compliance with the Fair Housing Act and Americans with

Disabilities Act." (*Id*. at 70). A rolling privilege log

reveals that Gables withheld a number of documents identified as "Accessibility Field Observation Reports," claiming they were prepared in anticipation of litigation and therefore constituted protected work product. (Paper 109, Ex. 1, Attach. F).

Based on the documents referenced in the privilege log, along with indicia of pre-complaint accessibility reviews and/or remediation measures in documents Gables permitted it to inspect, ERC has identified a number of properties that it believes were subject to such reviews and/or remediation. On October 20, 2009, ERC served upon Gables a Rule 30(b)(6) deposition notice reflecting, *inter alia*, that it would seek testimony regarding the substance of the accessibility reviews and remediation efforts that Gables identified in its privilege log as protected work product. (Paper 109, Ex. 1, Attach. G, at Topics 6-8, 10-11). According to ERC, Gables has since asserted that it "will permit questions pertaining to the factual bases for its work product protection, but will instruct its various designated representatives not to answer questions concerning the substance of pre-complaint accessibility reviews and resulting remediation efforts, and the documents reflecting those activities." (Paper 109, Ex. 1, at 8-9).[1]

---

[1] The Rule 30(b)(6) depositions have since been postponed pending resolution of the instant motion to compel.

During the November 19, 2009, motions hearing, the parties presented argument regarding the pattern and practice allegations in ERC's complaint. In support of its position, counsel for ERC distributed a document entitled "Facts Supporting the ERC's Pattern and Practice Claims." (Paper 109, Ex. 1, Attach. I). The fifth item of that document stated as follows:

> In 2007, Gables itself hired outside consultants to test some of the Gables Subject Properties. Claiming that it performed these tests "in anticipation of litigation," Gables has sought to shield the results of the tests from discovery. But the few documents Gables has produced for inspection (but not provided) concerning the tests show that the consultants themselves found multiple violations of the pertinent statutory provisions.

(*Id*. at ¶ 5). At the hearing, counsel for ERC asserted, "[t]hese are properties that are named in the complaint and I don't have a full list of them because they are not providing these documents. But that's something we're certainly going to pursue in discovery and probably in motions practice." (Paper 104, at 74-75). In response, counsel for Gables argued that the fifth item "deals with the fact that Gables has hired outside consultants to assist them in the construction process, to advise them on fair housing matters and that will prove to be a break of the pattern and practice, if this is any pattern and practice, because there was a substantial change at that point

in time." (*Id.* at 79-80). Based on this representation, ERC now complains that Gables intends to rely on documents in defense of the pattern and practice allegations that it refuses to produce under claim of work product protection.[2]

On December 23, 2009, ERC served a motion to compel Gables' compliance with its discovery obligations concerning its pre-complaint accessibility reviews and resulting efforts to remediate the subject properties. (Paper 109, Ex. 1). ERC argues that because Gables had no notice of its intent to file this lawsuit prior to the time it was actually filed, the pre-complaint steps it took to identify and remediate violative conditions at the subject properties could not have been done "in anticipation of litigation," and thus documents evidencing these measures could not be protected work product. Even if the withheld documents are protected work product, ERC contends,

---

[2] In opposing the motion to compel, Gables attempts to draw a distinction between documents created by Mr. Skarzenski in the ordinary course of business – which they have and will continue to produce and upon which they will rely in their defense – from allegedly protected documents, created in anticipation of litigation, that will not be relied upon in their defense. In its reply brief, ERC argues, *inter alia*, that there is no apparent distinction between the allegedly privileged and non-privileged documents. Gables takes exception with the arguments advanced by ERC in its reply papers and has moved for leave to file a surreply to address what it claims are novel arguments asserted for the first time in reply. (Paper 110).

Assuming, *arguendo*, that the arguments raised by ERC in its reply papers are novel, the court need not consider them in deciding its motion to compel. Accordingly, Gables' motion for leave to file a surreply will be denied.

their production should be compelled because ERC has established substantial need.

On January 22, 2010, Gables served its opposition papers, arguing that: (1) ERC waived its right to compel production of the documents pursuant to Discovery Guideline 9(c)(iii) and Local Rule 104.8, which were in effect at the time the privilege logs and discovery responses at issue were provided; (2) the documents were prepared in anticipation of litigation, insofar as Gables was aware that ERC had initiated law suits against several similarly-situated businesses and reasonably believed that a lawsuit against it would follow; (3) the documents constitute opinion work product and are, therefore, subject to absolute immunity; and (4) even if they are subject to only qualified immunity, ERC has failed to demonstrate substantial need for them.

After conciliation efforts proved unsuccessful, on February 11, 2010, ERC filed a certificate pursuant to Local Rule 104.7, along with the attached motion papers. (Paper 109).

**B.    Analysis**

**1.    Waiver under Local Rules**

Gables initially observes that at the time it identified the documents it claims are protected, Discovery Guideline 9(c)(iii) of the Local Rules, which has since been repealed, provided that a party may serve a motion to compel within twenty

days after receiving, in response to a discovery request, a claim of privilege supported by factual detail establishing the basis for the claim in a privilege log. Further observing that, pursuant to Local Rule 104.8(a), a party must serve a motion to compel within thirty days of receiving an unsatisfactory discovery response, Gables contends that ERC has waived its right to compel production of the documents it now seeks by virtue of the fact that it failed to serve its motion to compel in a timely manner.

ERC argues that Discovery Guideline 10(d)(iv), which replaced former Guideline 9(c)(iii) and took effect on December 1, 2009, should govern. The new Guideline provides, in pertinent part, that "[r]easonably promptly after receiving" notice of documents withheld, "the party seeking disclosure should notify the party from whom disclosure is sought of any deficiencies in the particularization of the basis for any privilege/protection asserted." Local Rules, Discovery Guideline 10(d)(iv). ERC asserts that it provided reasonably prompt notice to Gables of "(a) its disagreement with Gables' assertion of work product protection for its accessibility review reports and its waiver argument, and (b) the absence of factual detail supporting Gables' assertion [of work product protection]." (Paper 109, Ex. 1, at 22). As to the time requirement of Local Rule 104.8, ERC contends the rule "can only

14

reasonably be interpreted as applying to a final, factually supported privilege log, not to each installment of a rolling privilege log which is not supported by facts." (*Id.* at 22).

The Local Rules do not contain a provision specifically addressing whether a repealed Rule or Guideline that was in effect at the time an issue arose, rather than the Rule or Guideline in effect at the time the issue is considered by the court, should apply. The general rule applying to the Federal Rules of Civil Procedure is that amended rules govern, "insofar as just and practicable, all proceedings in civil cases then pending." *In re Kaypro*, 218 F.3d 1070, 1077 (9th Cir. 2000) (quoting April 27, 1995, Order Adopting and Amending Rules, *reprinted in Federal Civil Judicial Procedure and Rules* 34 (West 2000)). The court need not resolve this issue here, however, because under the circumstances of this case strict application of either the former Discovery Guideline or Local Rule 104.8(a) is unwarranted.

"[W]hen a party refuses to produce documents during discovery on the basis that they are privileged or protected, it has a duty to particularize that claim." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 254 n. 2 (D.Md. 2008) (citing, *inter alia*, former Discovery Guideline 9(c)). A privilege log that does "little more than briefly identify and describe each document and identify the basis for the refusal to

15

produce it," does not satisfy this requirement. *Id*. Pursuant to Fed.R.Civ.P. 26(b)(5), in addition to asserting a claim of privilege or protection, a party must "describe the nature of the documents, communications, or things not produced or disclosed – and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim." Here, Gables' privilege logs simply identify that a number of "Accessibility Field Observation Report[s] prepared in anticipation of litigation" by Mr. Skarzenski with respect to various properties were withheld. (Paper 109, Ex. 1, Attach. F). This falls well short of the mark set by Rule 26(b)(5), and it unreasonable for Gables to claim that ERC has waived its right to challenge the protected status of the withheld documents that Gables itself failed to describe with the requisite particularity. In other words, because Gables failed strictly to comply with the requirements of former Discovery Guideline 9(c), it lacks a credible basis for claiming that ERC has failed to do so. Considering also that strict compliance with any timeliness requirement is complicated in this case by the fact that the ongoing discovery process is occurring in phases; that Gables was placed on notice of ERC's position with respect to the documents at issue within a reasonable period of time after work product protection was asserted; and that Gables has failed to identify any significant

prejudice inuring to it as a result of what was a relatively short delay, the fact that ERC served its motion to compel beyond thirty days after it received notice of the asserted protection does not constitute a waiver. To the extent that former Discovery Guideline 9(c) and/or Local Rule 104.8(a) require otherwise, the court waives their application here. *See* Local Rule 604.

## 2. **Work Product Protection**

Federal Rule of Civil Procedure 26(b)(3) provides, in pertinent part, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Where work product protection is invoked, it is that party's burden to show, "as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and, (2) was prepared in anticipation of litigation." *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D.Va. 2004) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947); *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996)); *see also E.I. Du Pont de Nemours and Co. v. Kolon Industries, Inc.*, No. 3:09cv58, 2010 WL 1489966, *3 (E.D.Va. Apr. 13, 2010).

As the Fourth Circuit explained in *National Union Fire Insurance Co. v. Murray Sheet Metal Co.*:

> Proper application of the work product rule requires recognition of two competing policies. On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." On the other hand, our adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client.

967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman*, 329 U.S. at 507). Shortly after *National Union Fire Insurance Co.* was decided, the court set forth a framework for determining the availability of work product protection:

> First, we must determine whether the work product was made "in anticipation of litigation." If not, then the inquiry ends because the material is not protected. If the material was prepared in anticipation of litigation, then we must determine whether the material is "opinion work product" or "non-opinion work product." Opinion work product prepared in anticipation of litigation is absolutely immune from discovery. Finally, if the material is nonopinion work product, then it may be discovered upon a showing of "substantial need." *See National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992).

*Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).[3]

Here, Gables submits the affidavit of Executive Vice President and Chief Operating Officer Sue Ansel in opposing ERC's motion to compel. (Paper 190, Ex. 2, Attach. A). Ms. Ansel avers that, beginning in 2005, she became aware through various media reports, conferences, and discussions with "industry leaders" that ERC had filed a number of lawsuits against national developers of multi-family housing and "would continue to file more lawsuits against companies like Gables." (*Id.* at ¶ 7). At around the same time, she explains, "Gables was converting from a public company to a privately held company, and its investors sparked internal discussions about the potential for Gables to be sued given ERC's publicized approach to litigating against every national multifamily developer, irrespective of the condition of that developer's properties." (*Id.* at ¶ 14). Following a series of internal

---

[3] The court vacated its decision in *Sandberg* upon the unopposed request of one of the parties. *See Sandberg v. Va. Bankshares, Inc.*, 1993 WL 524680 (4th Cir. Apr. 7, 1993). Nevertheless, a vacated opinion has precedential effect if it has been "validated" by the court of appeals. *See Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 848 F.2d 457, 459 (4th Cir. 1988). *Sandberg* has been cited with approval by the Fourth Circuit on multiple occasions. *See, e.g., Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 280 (4th Cir. 1993); *see also RLI Ins. Co. v. Conseco, Inc.*, 477 F.Supp.2d 741, 746 n.7 (E.D.Va. 2007).

discussions, Ms. Ansel consulted with representatives of companies involved in litigation with ERC regarding "names of potential accessibility experts who could assess the already constructed projects in Gables' portfolio," and "[o]ne name suggested was Pete Skarzenski[.]" (*Id*. at ¶ 16).

Mr. Skarzenski was retained by Gables in April 2006 "to make assessments of Gables' apartment complexes so Gables might understand its potential exposure to any lawsuit filed by the Equal Rights Center or any other plaintiff who may allege that Gables' buildings do not comply with their view of the law." (*Id*. at ¶ 17). Ms. Ansel "sought Mr. Skarzenski's judgment and advice, and not simply his compilation of facts about the Gables' portfolio"; her "intent was to keep Mr. Skarzenski's work confidential within a small group of individuals at Gables." (*Id*. at ¶ 18). He began his work immediately by conducting "privileged assessments of Gables' completed properties," and thereafter "provided Gables with written reports memorializing his work product." (*Id*. at ¶ 19). In October 2007, shortly after this litigation commenced, Mr. Skarzenski was directly retained by Gables' attorneys "to continue his work." (*Id*. at ¶ 20).

Mr. Skarzenski's affidavit is also provided by Gables. (Paper 190, Ex. 2, Attach. L). Since 2004, Mr. Skarzenski, an architect by trade, has been the owner of "Pete Skarzenski

Consulting," a "business specializ[ing] in multi-family housing
and commercial buildings, including accessibility reviews,
project plan reviews, multi-family project specifications, and
post-construction accessibility observations and repair." (*Id.*
at ¶ 2). "A significant percent[age]" of his consulting
business relates to "design and construction requirements of the
Fair Housing Act and the Americans with Disabilities Acts," and
includes "providing advice to lawyers, to sellers and buyers of
properties, and to persons and entities undertaking new
construction of multifamily housing." (*Id.* at ¶ 9). "In April
2006," Mr. Skarzenski avers, "Susan Ansel with Gables
Residential ('Gables'), which has also separately hired me to
help it with its regular design and construction activities,
engaged [him] to conduct post-construction analyses of its
multifamily properties," specifying that his work would be
conducted "in anticipation that Gables might be sued by the
Equal Rights Center or a similar plaintiff just as other
national housing providers had recently been sued." (*Id.* at ¶
10). Mr. Skarzenski asserts that the reports he created for
Gables reflect his "thoughts and impressions of possible issues
that could be raised by a plaintiff organization and do not
solely recite facts." (*Id.* at ¶ 14).

ERC contends that the Skarzenski reports could not be
protected under the work product doctrine because they were

neither prepared by or at the behest of an attorney. Gables
counters by citing cases holding that documents need not be
prepared by or at the behest of an attorney for work product
protection to apply. ERC argues that the reports could not have
been prepared in anticipation of litigation, as it had not even
threatened to file this suit at the time they were prepared.
Gables asserts that they were prepared because similarly-
situated developers had been sued by ERC and it was reasonable
for them to assume that a lawsuit was forthcoming. Regardless
of whether they were prepared in anticipation of litigation, ERC
maintains, the reports must be disclosed because there would
otherwise be no evidence of remediation measures taken by
Gables. Gables claims that the reports are opinion work product
and, therefore, are entitled to absolute immunity.

    This motion raises a number of complex issues with respect
to the application of the work product doctrine about which the
Fourth Circuit has not definitively spoken and other courts are
divided. There is, however, a relatively straightforward and
practical way of resolving the dispute. Preliminarily, it must
be noted, work product protection extends only to "documents and
tangible things." Fed.R.Civ.P. 26(b)(3). Thus, Gables cannot
invoke work product protection as a basis for withholding the
underlying facts identified in the allegedly protected documents
in their answers to interrogatories or during Rule 30(b)(6)

depositions. On the other hand, the only information that ERC needs, for purposes of this suit, relates to properties that were remediated following Mr. Skarzenski's reports. ERC either already has or will conduct inspections of the "subject properties," and can draw its own conclusions based on its observations for properties that have not been remediated. As to any properties that were remediated, however, the inspections will not reveal the nature of any changes that were made. Thus, ERC clearly has a substantial need for disclosure of any findings of potentially violative conditions observed in Mr. Skarzenski's reports where remediation measures were subsequently taken. To the extent that the reports may constitute opinion work product, Mr. Skarzenski's opinions as to what might be asserted in a hypothetical lawsuit against Gables are inconsequential and may be redacted. What must be produced, however, are the facts noted for any properties that were subsequently remediated.

In the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 497 (1947), the Supreme Court saw its "delicate and difficult task" as striking a balance between the "competing interests" of preventing "unwarranted excursions" into the privacy of an attorney's work, on the one hand, and the public policy supporting "reasonable and necessary inquires," on the other. Here, the court finds this balance would be achieved by

requiring Gables to provide a supplemental answer to ERC's fourth interrogatory – found at paper 109, Ex. 1, Attach. A, at 7 – within thirty days of the date of the accompanying order. Work product protection may not be invoked to shield this information. Additionally, for any properties that were remediated, Gables will provide redacted documents, as requested by ERC's fourth document request – found at paper 109, Ex. 1, Attach. A, at 7 – within thirty days of the accompanying order. ERC's motion to compel will be denied, however, with respect to any of Mr. Skarzenski's reports related to properties for which remediation measures were not subsequently taken.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to designate discovery material as public will be granted in part and denied in part, and their alternative motion for leave to seal will be granted; Plaintiff's motion to compel discovery will be granted in part and denied in part; and Defendant's motion to file a surreply will be denied.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge